## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CYNTHIA ILENE FLEMING,

               Petitioner,               Case No. 17-cv-13719
                                           Hon. Matthew F. Leitman

v.

SHAWN BREWER,

               Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF #1), (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Cynthia Ilene Fleming is a state prisoner in the custody of the Michigan Department of Corrections. On November 15, 2017, Fleming filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* ECF #1.) In the petition, Fleming challenges her state-court conviction for (1) second-degree murder, Mich. Comp. Laws § 750.317 and (2) possession of a firearm in the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b.

The Court has reviewed Fleming's claims and concludes that she is not entitled to federal habeas relief. Accordingly, the Court will **DENY** her petition. The Court will also decline to issue Fleming a certificate of appealability. But it will grant her permission to appeal *in forma pauperis*.

# I

Fleming was originally charged with first-degree premeditated murder and felony-firearm in the shooting death of her husband in Hamtramck, Michigan. The prosecutor's theory at trial was that Fleming shot her husband because she was angry about his gambling habit. Following a bench trial, a judge on the Wayne County Circuit Court convicted Fleming of the lesser included offense of second-degree murder and of the felony-firearm charge. The relevant facts introduced at trial are as follows.

Fleming called 911 after shooting her husband. (*See* ECF #8-10 at Pg. ID 558.) The 911 dispatch operator who received the emergency call testified that the caller reported that she had just shot her husband. (*See* ECF #8-8 at Pg. ID 284-85, 290.). The caller also said "come and get me" and the dispatcher recalled her saying "he was beating on her." (*Id.* at Pg. ID 310-11.) Fleming did not mention a struggle when she spoke with the 911 dispatch operator. (*See* ECF #8-11 at Pg. ID 605.).

Police thereafter responded to the crime scene. Officer Andrew Capo discovered the victim in the kitchen, semi-conscious and with two gunshot wounds. (*See* ECF #8-8 at Pg. ID 260-61.) Officer Neil Egan observed a spent shell casing near the entrance to the kitchen and the victim lying in a pool of blood. (*See* ECF #8-9 at Pg. ID 390-91.) Officer Capo and another officer carried the victim to an ambulance and asked him questions. Although unable to speak, the victim nodded

affirmatively when officers asked if his wife shot him. (*See* ECF #8-8 at Pg. ID 264-65.)

Police arrested Fleming and took her to the police station. (*See* ECF #8-9 at Pg. ID 397-98.)   During the ride to the police station, Officer Egan overheard Fleming say something to the effect of "she hoped [her husband] died and that he shouldn't have lost all of their money at the casino."  (*Id.* at Pg. ID 399.) Fleming admitted at trial that she had said something to this effect. (*See* ECF #8-11 at Pg. ID 578.)

Dispatcher Andrew Robinson served as the booking officer at the police station, and he noticed that Fleming's clothes were not ripped or torn.  Robinson did not observe any signs of injury to Fleming nor did he notice any blood. (*See* ECF #8-8 at Pg. ID 315-316). Fleming also informed Robinson several times that her husband "told her to shoot him." (*Id.* at Pg. ID 299.)  Fleming also claimed that her husband "shot himself." (*Id.* at Pg. ID 299-300.)

Dr. Jeffrey Hudson performed the autopsy on Fleming's husband. Dr. Hudson testified that the victim died from gunshot wounds on the back of the right shoulder and the front of the left thigh. (ECF #8-9 at Pg. ID 440-444, 451.)

Fleming testified in her own defense at trial.  She testified that she shot her husband in self-defense.  She said that her husband had abused her for several years. She further testified that she had previously obtained a personal protection order

against him and that police were called to the house several times, but none of those incidents went to court. (*See* ECF #8-10 at Pg. ID 498-501, 510-11.)

Fleming further testified that she owned the murder weapon and had it with her on the day of the shooting. Fleming said that on that day, she had been shopping and left the gun unsecured in the left pocket of her jacket when she returned home. (*See id.* at Pg. ID 550). After shopping, Fleming began drinking vodka. (*See id.* at Pg. ID 542.) Although Fleming testified that she was not drunk, the trial judge in her findings of fact noted that Fleming appeared intoxicated during a video interview with the police later that day and was slurring her speech. (*See* ECF #8-13 at Pg. ID 690.) Fleming testified that after she drank her vodka, her husband became mad at her, and she went to watch TV in the bedroom. When Fleming later came out of the bedroom, she saw her gun on the TV table in the living room near her husband. (*See* ECF #8-10 at Pg. ID 547-51.) When Fleming saw the gun, she lunged and tried to grab it. (*See id.* at Pg. ID 553.) Fleming said that there was a struggle for the gun and she ended up shooting her husband. (*See id.* at Pg. ID 555-556.)

Fleming's neighbor Yolanda Bolls testified that on a prior occasion, Fleming came to her house naked, with a bloody mouth, and told Ms. Bolls that she had been fighting with her husband. Bolls testified that four or five incidents occurred between 1998 and 2007, although she did not actually witness any of them as they happened. Police were not called for these incidents. (*See id.* at Pg. ID 532-33, 538.)

4

Certain evidence undermined Fleming's testimony. Police found that furniture in the house was not disturbed (and therefore provided no evidence of a struggle) nor was there any damage to the house. In addition, while Fleming testified that that her husband had grabbed the gun with his left hand, her husband was actually right handed. And although Fleming claimed that the shooting occurred in the living room, the police found her husband in a pool of blood in the kitchen. Fleming also admitted that her husband never used her gun against her.

Fleming's account of the shooting also changed several times. Fleming testified at trial that the gun discharged two times during the struggle, (*see id.* at Pg. ID 556-57), but she originally told the police the gun went off three times. (*See* ECF #8-11 at Pg. ID 602.) Fleming also told the police at various times that her husband shot himself, that she shot him, and that her husband asked her to shoot him. (*See id.* at Pg. ID 603-607.) Finally, Fleming told Detective Jacqueline Crachiola that police had to pull the victim out of her arms upon their arrival, but she also testified that she let the police in the front door when they arrived. (*See id.* at Pg. ID 627-28.)

Fleming appealed her convictions to the Michigan Court of Appeals. That court affirmed her convictions but remanded the case to the trial court to correct the presentence investigative report to reflect that Fleming was convicted following a bench trial and that she did not have any outstanding warrants at the time of sentencing. *See People v. Fleming*, 2016 WL 716769 (Mich. Ct. App. Feb. 23, 2016).

Fleming then filed a leave to appeal in the Michigan Supreme Court. That court ultimately reversed the Michigan Court of Appeals' decision in part and remanded the case to the trial court "to determine whether the court would have imposed a materially different sentence under the sentencing procedure described in *People v Lockridge*, [870 N.W.2d 502] ([Mich.] 2015)." *People v. Fleming*, 885 N.W.2d 255 (Mich. 2016).[1] The Michigan Supreme Court denied Fleming leave to appeal with respect to her conviction. *See id.*

On September, 15, 2017, Fleming filed her petition for a writ of habeas corpus in this Court. (*See* ECF #1.) She seeks habeas relief on the following grounds:

> I. Petitioner's right to effective assistance of trial counsel was denied in violation of the US Const Am VI and Mich Const 1963, Art 1 §§ 17, 20.
>
> II. Petitioner's US Const Am XIV right to due process was violated due to conviction for second degree murder because it is not supported by sufficient evidence from which a reasonable trier of fact could determine beyond a reasonable doubt that petitioner committed the elements of the offense.
>
> III. The trial court abused its discretion and violated Petitioner's constitutional rights to due process to a fair trial and the right to present a defense when motion to reopen the proofs was denied in violation of US Const, Ams V, VI, XIV; Mich Const, Art 1 §§ 17, 20.

(*Id.*)

---

[1] The trial court on remand declined to re-sentence Fleming. Fleming's appeal from the re-sentencing is pending in the Michigan appellate courts. Petitioner does not raise any challenges to the denial of re-sentencing in her petition.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

### A

Fleming first argues that she is entitled to federal habeas relief because she was denied the effective assistance of trial counsel. Federal claims of ineffective assistance of counsel are subject to the deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *See id.* at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688, 689. The "prejudice" component of a *Strickland* claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Fleming has raised several distinct claims of ineffective assistance, and the Court will examine each in turn.

## 1

Fleming first alleges that her trial counsel was ineffective for failing to present an expert witness on Battered Women's Syndrome or Battered Spouse Syndrome. The Michigan Court of Appeals considered this claim on Fleming's direct appeal and rejected it:

> Defense counsel did present evidence that defendant had endured prior physical abuse from the victim. The victim's daughter and one of the victim's neighbors testified about defendant and the victim's volatile relationship. Defense counsel also extensively questioned a police detective about prior domestic dispute calls originating from defendant and the victim's apartment. While it is conceivable that expert testimony may have bolstered the

defense, defendant has failed to provide us with a basis upon which we could reach this conclusion, let alone to determine whether it affected the outcome of the case. Defendant has not presented an affidavit or any other material to indicate that such an expert exists and what the substance of his or her testimony would have been. Defendant filed a pro per motion to remand for a *Ginther* hearing, which also contained no such material. On August 14, 2015, we denied her motion without prejudice stating that we "will consider another motion to remand if it is filed by defendant-appellant's counsel and is supported by affidavits to show the testimony that could have been presented at trial and is available to place on the record on remand." Such material has not been submitted. Accordingly, we cannot conclude that defense counsel's failure to call an expert as to battered woman syndrome was ineffective or that it was reasonably likely to be outcome determinative.

*Fleming*, 2016 WL 716769, at *2 (internal footnote and citation omitted).

The Michigan Court of Appeals' decision was not unreasonable. Fleming has failed to present any evidence – either in state court or to this Court – that she has retained an expert witness to testify on the issue of Battered Spouse Syndrome. Nor has Fleming specifically identified the testimony that an expert would offer in support of her defense. A habeas petitioner's claim that her trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F.3d 662, 672 (6th Cir. 2006). Because Fleming's claim with respect to the expert witness is based on speculation, she is not entitled to federal habeas relief on this ground.

**2**

Fleming next claims that her trial counsel was ineffective for failing to adequately communicate with her, leaving her unaware of her counsel's trial strategy, the defenses he would raise, or the evidence that would be presented at trial. The Michigan Court of Appeals reviewed this claim on direct appeal and rejected it on the basis that Fleming could not show the required prejudice: "[G]iven that defense counsel appears to have presented the defense that defendant wanted him to present at trial, we are not persuaded that the outcome of the trial would have been different had defense counsel communicated with defendant more before trial." *Fleming*, 2016 WL 716769, at *3.

The Michigan Court of Appeals' decision was not unreasonable. Fleming has not demonstrated how additional consultation with her trial counsel would have altered her outcome at trial. She simply has not offered any arguments that establish the required prejudice. Fleming is therefore is not entitled to federal habeas relief on this claim.

**3**

Fleming next contends that her trial counsel was ineffective for failing to object to the admission of hearsay statements. The alleged hearsay statements were (1) testimony from a police officer that Fleming stated that she hoped her husband would die and (2) testimony from a firefighter that Fleming's husband indicated that

Fleming shot him. The Michigan Court of Appeals reviewed this claim on direct appeal and rejected it. The state appellate court concluded that Fleming's statement was not hearsay because it was a party-opponent admission under Michigan Rule of Evidence 801(d)(2) and that her husband's nonverbal statement to the firefighter was admissible as a dying declaration under Michigan Rule of Evidence 804(b)(2). *See Fleming*, 2016 WL 716769, at *3. The Michigan Court of Appeals further concluded that the admission of these statements did not violate Fleming's Sixth Amendment right to confrontation because Fleming's own statements do not implicate the Confrontation Clause and her husband's nonverbal statement to the firefighter was nontestimonial. *See id.* The Michigan Court of Appeals therefore held that Fleming's counsel was not ineffective for failing to object to the admission of these statements because the statements were admissible. *See id.*

The Michigan Court of Appeals' ruling was not unreasonable. First, with respect to Fleming's statement to the police officer, the Michigan Court of Appeals did not unreasonably conclude that the statement was admissible because the officer was reporting Fleming's own statement and, therefore, Fleming's counsel was was not ineffective for failing to object to its admission. *See United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005) (counsel does not render infective assistance for failing to object to admissible evidence). Second, with respect to Fleming's husband's indication to the firefighter that Fleming shot him, even if her counsel had

a basis to object to the admission of that statement, Fleming has not shown that she suffered any prejudice from its admission. Indeed, Fleming *admits* that she was the shooter and that she shot her husband. Finally, Fleming has not identified any clearly established federal law that supports her argument that the admission of either of these statements, under the facts that exist here, violated the Confrontation Clause. For these reasons, Fleming is not entitled to federal habeas relief based on the failure to object to the admission of this testimony.

## 4

Fleming next claims that her trial counsel was ineffective for failing to call an expert at sentencing to present mitigating evidence. The Michigan Court of Appeals reviewed and rejected this claim on direct appeal:

> Defendant acknowledges that while preparing for sentencing, defense counsel did consult with a psychologist to determine whether there was a reason for a downward departure. Defense counsel, however, ultimately decided not to present an expert in support of his request for a downward departure. Instead, he prepared a memorandum presenting his argument and then orally argued in favor of a downward departure. On appeal, defendant argues that if a psychologist were contacted mitigating factors may have been expounded upon by the expert. Defendant suggests that the mitigating factors might have included the fact she allegedly had post-traumatic stress disorder (PTSD). However, besides defendant's unsupported assertion, there is nothing in the record indicating what a psychologist would have actually stated. Accordingly, defendant has not established the factual predicate for her claim and has not overcome the presumption that defense counsel was acting pursuant to a

> valid strategy when he decided not to present a psychologist at sentencing.

*Fleming*, 2016 WL 716769, at *4 (internal citation omitted).

The Michigan Court of Appeals' decision was not unreasonable. Fleming has not retained such an expert, and she has not identified any specific testimony that such an expert would have offered at sentencing. Thus, "one is left with pure speculation on whether the outcome of the trial or the penalty phase could have been any different." *Slaughter v. Parker*, 450 F.3d 224, 234 (6th Cir. 2006) (*quoting Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004)). Fleming is therefore not entitled to federal habeas relief on this ground.

## 5

Fleming next contends that her trial counsel was ineffective for failing to move to suppress statements that Fleming made to the police before she had been advised of her *Miranda* rights. The Michigan Court of Appeals reviewed and rejected the claim on direct appeal:

> Defendant also argues that defense counsel was ineffective for failing to suppress her statements to the police officer in the squad car and her statements during the booking process on the grounds that the statements were made when she had not been advised of her *Miranda* rights. However, *Miranda* warnings are not required unless the accused is subject to a custodial interrogation. See *People v. Hill*, 429 Mich. 382, 397–399; 415 NW2d 193 (1987). Here, the police officer testified that defendant was talking to herself in the back of the squad car when she made the statement that she hoped the victim died and that he should

13

not have lost all their money at the casino. The officer testified that defendant was not being questioned when she made the statement. Further, during the booking procedure, a booking officer asked defendant general identification questions, but did not question defendant about the shooting. The officer testified that defendant made several unsolicited statements during the booking procedure that pertained to the shooting, including statements that the victim grabbed the gun and attempted to shoot himself and statements that the victim had asked defendant to shoot him. Because none of the challenged statements was solicited during a custodial interrogation, we conclude that defense counsel was not ineffective for failing to suppress the statements.

*Fleming*, 2016 WL 716769, at *4 (internal footnote omitted).

This decision was not unreasonable. The procedural safeguards outlined in *Miranda* are required where a suspect in custody is subjected to interrogation. *See Rhode Island v. Innis,* 446 U.S. 291, 300 (1980). Where a defendant makes a voluntary statement without being questioned or pressured by the police, the statement may be admissible even in the absence of *Miranda* warnings. *See United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir. 1997)

Here, Fleming has not shown that she was subjected to a custodial interrogation by the police following her arrest. Nor has she shown that her statements were not voluntarily and spontaneously made. Thus, Fleming has not shown that there was a reasonable probability that a motion to suppress based on an alleged *Miranda* violation would have succeeded in this case. Accordingly, she has not established that she was denied effective assistance when her trial counsel failed

to move for the suppression of her statements on this basis. *See Koras v. Robinson,* 123 F. App'x 207, 210-12 (6th Cir. 2005). Fleming is therefore not entitled to federal habeas relief on this claim.

## 6

Fleming next asserts that her trial counsel was ineffective for failing to call her mother, two neighbors, and her husband's cousin as defense witnesses at trial. Fleming claims that her mother would have corroborated her testimony that her husband was angry about a number of issues; that one neighbor would have testified that on the day of the shooting, Fleming's husband was angry about various issues, Fleming seemed shaky and "out of it" when approached by her husband, and that Fleming did not make sense when she was talking to the neighbor; that the second neighbor would have testified that she had witnessed Fleming's husband abuse Fleming on multiple occasions and that the neighbor did not visit Fleming and her husband because the neighbor was sick of seeing Fleming's husband beat Fleming; and that Fleming's husband's cousin could have testified that Fleming's husband never told the cousin that Fleming had previously shot at him.

The Michigan Court of Appeals reviewed and rejected the claim on direct appeal, in part, because Fleming failed to present any affidavits from these proposed witnesses to support her claim. *See Fleming*, 2016 WL 716769, at *4 (internal

footnote omitted). The state appellate court further concluded that the failure to call these witnesses did not cause Fleming any prejudice:

> Defense counsel presented testimony supporting defendant's testimony that the victim was angry with her and that he had previously abused her, including presenting a personal protection order that defendant had obtained against the victim following one incident of abuse. The trial court never expressed any doubt with regard to that testimony; however, the court found that defendant's testimony lacked credibility, in main part because she testified that the victim was shot twice in the living room, but there was no blood actually found in the living room. The court also noted that defendant's stories about what occurred during the shooting were inconsistent. On these facts, defense counsel was not ineffective.

*Fleming*, 2016 WL 716769, at *4.

The Michigan Court of Appeals' decision was not unreasonable. Fleming failed to submit any offer of proof or any affidavits sworn by the proposed witnesses to either the state appellate courts or this Court. Indeed, Fleming has not offered, either to the Michigan courts or to this Court, any evidence beyond her own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been. In the absence of such proof, it was not unreasonable for the Michigan Court of Appeals to conclude that Fleming had failed to establish the required prejudice from her counsel's failure to call these witnesses to testify at trial. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Moreover, it was not unreasonable for the Michigan Court of Appeals to conclude

16

that much of the proposed testimony was cumulative of the evidence that was presented at trial. Fleming is therefore not entitled to federal habeas relief on this claim.

**7**

Fleming next claims that her trial counsel was ineffective for failing to request a continuance during the trial when counsel began feeling ill. The Michigan Court of Appeals considered and rejected this claim on direct appeal:

> Defendant asserts, without support, that five days after the trial, defense counsel told her he did not object to "certain witnesses" on July 17, 2014, the last day of trial, because he was not feeling well. It is not clear which witnesses defense counsel apparently failed to object to because of illness. The record shows that defendant was the only witness that testified on July 17, 2014. Moreover, there is nothing on the record to indicate that defense counsel was, in fact, ill, or that, if he was ill, it affected his ability to effectively represent defendant. Given that defendant has not identified the witnesses that apparently should have been objected to or what portions of their testimony was objectionable, defendant has not established the factual predicate for her claim, and so relief is not warranted on this claim.

*Fleming*, 2016 WL 716769, at *5 (internal citation omitted).

The Michigan Court of Appeals' decision was not unreasonable. Fleming has not shown that her trial counsel's failure to request a continuance affected the outcome of her case. Nor has she presented any evidence that her counsel was, in fact, ill, and that that illness caused her any prejudice. Fleming is therefore not

entitled to federal habeas relief on this claim. *See Bacon v. Klee*, 2016 WL 7009108, at *5 (6th Cir. Nov. 30, 2016).

## 8

Fleming next argues that her trial counsel was ineffective for failing to object to the pre-sentence investigation report on the ground that it contained inaccurate information. Fleming raised this issue on direct appeal, and the Michigan Court of Appeals agreed with her that her pre-sentence investigation report contained inaccurate information. It therefore remanded her case to the trial court so that the report could be corrected. *See Fleming*, 2016 WL 716769, at *8. Accordingly, because Fleming received relief on this claim in the state appellate court, her ineffective assistance of counsel claim that was predicated on the inaccurate pre-sentence investigation report is now moot. *See U.S. v. Jones,* 489 F. 3d 243, 255 (6th Cir. 2007).

## 9

Finally, Fleming argues that she is entitled to federal habeas relief because of the cumulative nature of her trial counsel's ineffectiveness. Because, for all of the reasons stated above, Fleming's individual claims of ineffectiveness are meritless, she cannot show that the cumulative errors of her trial counsel amounted to ineffective assistance of counsel. *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir.

2000).  Fleming is therefore not entitled to federal habeas relief on her ineffective assistance claim.

## B

Fleming next contends that there was insufficient evidence to sustain her second-degree murder conviction.  The critical inquiry when a court reviews whether there was sufficient evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

Fleming first contends that the prosecution presented insufficient evidence that she acted with malice aforethought, a requirement for second-degree murder under Michigan law.  Fleming raised this claim on direct appeal, and the Michigan Court of Appeals rejected it:

> There was sufficient evidence to establish that defendant acted with malice when she shot the victim.  Although defendant presents her trial testimony as support for a finding that she did not act with malice, we must view the evidence in the light most favorable to the prosecution.  Here, defendant called 911 after the shooting and stated

that she had shot the victim. Then, when she was placed in
a police car, she stated that she hoped defendant died and
that he should not have lost all of their money at the casino.
Further, during the booking procedure at the police station,
defendant also made unsolicited statements about how the
victim told her to shoot him. The record also established
that defendant was shot twice, once in the back and once
in his left leg. Viewed in the light most favorable the
prosecution, the evidence supports a finding that when
defendant shot the victim she intended to kill him and, in
fact, wanted him to die.

*Fleming*, 2016 WL 716769, at *5 (internal citation omitted).

The Michigan Court of Appeals' decision was not unreasonable. Fleming's

own statements, including her admission that she shot her husband and that she

hoped he died, provided sufficient evidence that she acted with the required malice.

And Fleming has not otherwise shown that the state courts unreasonably applied

*Jackson* with respect to this claim. Fleming is therefore not entitled to federal habeas

relief.

Fleming next contends that there was insufficient evidence to disprove her

self-defense claim. The Michigan Court of Appeals considered this claim on direct

appeal and rejected it:

At trial, defendant testified that she came out of the
bedroom and saw her gun on a TV table. She stated that
she had left her gun in her jacket and that it had not been
in the "firing" position. She testified that when she saw the
gun she became concerned and started to ask the victim
about it but that before finishing her question, she and the
victim moved towards the gun. She testified the victim
reached the gun first and that she grabbed his hand and a

mutual struggle ensued during which the victim pulled her hair and swore at her. Defendant stated that the gun went off twice during the struggle at which point the victim accused her of shooting him in the leg and she responded he had shot himself in the leg. Whether or not to accept this version of events was for the factfinder, *People v. Jackson,* 292 Mich.App 583, 587; 808 NW2d 541 (2011), and in rendering its verdict, the trial court stated that it found defendant's testimony not credible. Moreover, the forensic evidence strongly indicated that the shots were fired from a distance of feet, not inches and were unlikely to have been fired during a close struggle. We conclude that the trial court did not err in finding that the prosecutor had proven beyond a reasonable doubt that defendant was not acting in self-defense.

*Fleming*, 2016 WL 716769, at *6.

There is some dispute with respect to whether this claim is cognizable on federal habeas review. (*See* Respondent Br., ECF #7 at Pg. ID 153-55.) But the Court need not resolve that question because even if this Court could review this claim, it would still conclude that Fleming is not entitled to federal habeas relief because the Michigan Court of Appeals' rejection of the claim was not unreasonable. In this case, the trial court judge chose to credit the prosecution witnesses' version of events and did not believe Fleming's story that she acted in self-defense. Thus, although there may have been some evidence to support Fleming's self-defense claim, "in light of the deference to be accorded to state-court factfinding under § 2254(e), as well as the traditional deference accorded to [the factfinder's] resolution of disputed factual issues," Fleming has not shown that the Michigan Court of

Appeals' unreasonably determined that the prosecutor disproved her claim of self-defense. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

Fleming lastly argues that there was insufficient evidence presented to sustain her conviction for second-degree murder because the prosecution failed to prove beyond a reasonable doubt that she did not kill her husband in the heat of passion that was caused by an adequate provocation.

Under Michigan law, absence of provocation is not an element of second-degree murder. *See Ruelas v. Wolfenbarger*, 580 F.3d 403, 413 (6th Cir. 2009) (quoting *People v. Darden*, 604, 585 N.W.2d 27, 31 (Mich. Ct. App. 1998)). Thus, the burden of proof to show provocation is on the defendant, and it must be shown by a preponderance of the evidence. *See id.* Accordingly, the prosecutor was not required to prove an absence of provocation in order to sustain a conviction for second-degree murder. Fleming is therefore not entitled to federal habeas relief on the basis that there was insufficient evidence of a lack of provocation.

## C

Finally, Fleming claims that the trial court violated her right to present a defense. Fleming insists that the state trial judge erred when he refused to reopen the proofs several days after closing arguments were finished in order to allow her defense counsel to provide a brief demonstration that could show how Fleming's

version of events could have led to the injuries sustained by her husband. The Michigan Court of Appeals considered this claim on direct appeal and rejected it:

> Here, the motion to reopen the proofs was heard over a week after the trial court heard closing arguments. The proposed evidence was not newly discovered and was, in fact, cumulative to defendant's trial testimony. Accordingly, on these facts, the trial court did not abuse its discretion in denying defendant's motion to reopen the proofs…. Moreover, the trial court's denial did not deprive defendant of her right to present a defense because she was, in fact, allowed to present her defense through her testimony, which was then argued by defense counsel during closing argument.

*Fleming*, 2016 WL 716769, at *7 (internal citation omitted).

The Michigan Court of Appeals' decision was not unreasonable. Fleming has not identified any Supreme Court precedent holding that a defendant's right to present a defense is violated where a trial court refuses to reopen proofs after closing arguments have been made and the case is concluded, particularly where the evidence was not newly discovered and would not have affected the outcome of the case. *See e.g. Buyck v. Palmer*, 2018 WL 2973130, at *2 (6th Cir. May 29, 2018) (habeas petitioner not entitled to certificate of appealability on claim that his right to present a defense was violated when the state court refused to reopen proofs after petitioner had been convicted). Fleming is therefore not entitled to federal habeas relief on this claim.

As Fleming has failed to demonstrate entitlement to federal habeas relief with respect to any of her claims, the Court will **DENY** her habeas petition (ECF #1).

## IV

In order to appeal the Court's decision, Fleming must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Fleming has failed to demonstrate entitlement to habeas relief with respect to any of her claims because they are all devoid of merit. Therefore, the Court will not issue her a certificate of appealability.

Although this Court declines to issue Fleming a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v.*

*Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an appeal is being taken in good faith. *See id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). Although jurists of reason would not debate this Court's resolution of Fleming's claims, an appeal could be taken in good faith. Therefore, Fleming may proceed *in forma pauperis* on appeal.

**V**

Accordingly, for the reasons stated above, the Court 1) **DENIES WITH PREJUDICE** Fleming's petition for a writ of habeas corpus (ECF #1), 2) **DECLINES** to issue Fleming a certificate of appealability, and 3) **GRANTS** Fleming permission to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: August 24, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 24, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764